**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY
(609) 989-2182

| | |
|---|---|
| CHAMBERS OF<br>FREDA L. WOLFSON<br>CHIEF JUDGE | Clarkson S. Fisher Federal<br>Building & U.S. Courthouse<br>402 East State Street<br>Trenton, New Jersey 08608 |

**LETTER ORDER**

January 6, 2023

Lawrence C. Hersh, Esq.
17 Sylvan Street, Suite 102B
Rutherford, New Jersey 07070

Aleksander Powietrzynski, Esq.
Winston & Winston, P.C.
75 South Broadway, Suite 443
White Plains, New York 10601

      RE:    *Scott Madlinger v. Financial Recovery Services, Inc.,*
                 No. 21-01288 (FLW)

Counsel:

      Plaintiff Scott Madlinger ("Plaintiff" or "Madlinger") filed an Amended Complaint on June 9, 2021, on behalf of himself and those similarly situated, against Financial Recovery Services, Inc. ("Defendant" or "FRS"). (ECF No. 7.) Madlinger alleges that Defendant violated sections 1692c, 1692e, and 1692f of the Fair Debt Collection Practices Act ("FDCPA") by (1) mailing a collection letter to Plaintiff that provided false, deceptive, and/or misleading language regarding settlement options in violation of section 1692e, and (2) using a vendor to generate and send the collection letter with Plaintiff's personal information in violation of sections 1692c and 1692f. On July 9, 2021, Defendant filed a motion to dismiss the Amended Complaint. (ECF No 11.) On January 25, 2022, however, as the case was still pending, I directed the parties to submit supplemental briefing addressing Article III standing in light of the Supreme Court's decision in *TransUnion LLC v. Ramirez*, __U.S.__,141 S. Ct. 2190 (2021). (ECF No. 21.) Thereafter, the parties submitted supplemental briefing. (*See* ECF Nos. 22-23.) In lieu of a formal Opinion, the Court renders its decision on standing in this Letter Order. The Court finds that Plaintiff does not have Article III standing to bring his §§ 1692c, 1692e, and 1692f claims.

      At any time during the pendency of a lawsuit, courts have an independent obligation to determine whether subject matter jurisdiction exists. *See Ballentine v. United States*, 486 F. 3d

806, 810 (3d Cir. 2007).[1] Article III of the U.S. Constitution limits the judicial power of federal courts to deciding "cases" or "controversies." § 2. This limitation serves the purpose of "prevent[ing] the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty*, 568 U.S. 398, 408 (2013) (citations omitted).

The doctrine of standing to sue is "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To satisfy Article III's standing requirements, the Supreme Court has established that a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Absent standing, there is no case or controversy, and a federal court cannot exercise subject-matter jurisdiction over the plaintiff's claims. Courts have an independent obligation to assess whether standing exists. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12 (h)(3); *see also Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (A court "can dismiss a suit *sua sponte* for lack of subject jurisdiction at any stage in the proceeding.").

In *Spokeo*, the Supreme Court explained that concrete injuries may be both tangible and intangible, and "[i]n determining whether an intangible harm constitutes injury in fact, both history and Congress play important roles." 578 U.S. at 340. To that end, the Supreme Court instructed courts to "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. at 341 (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 775–77 (2000)). In so doing, courts could ensure that the harm alleged in cases of statutory violations is more than just a "bare procedural violation." *Id*. *Spokeo* left open the possibility that the mere "risk of harm" could satisfy the concreteness requirement. *Id*. The Supreme Court's recent ruling in *TransUnion*, however, clarified that material risk of future harm can only serve as a basis for standing as a concrete harm in suits where a plaintiff pursues injunctive relief to prevent the harm from occurring. 141 S. Ct. at 2210. In contrast to generally inadequate "risk of harm," the Court explained that a concrete injury requires actual "downstream consequences" or "adverse effects." *Id*.; *see also Schultz v. Midland Credit Mgmt., Inc.*, No. 16-4415, 2022 WL 3013082, at *4 (D.N.J. July 29, 2022) (explaining that to establish standing post-*TransUnion*, plaintiffs must show evidence that bears a close relationship to the elements of the common-law analogue, such as reliance under fraud, and "harmful downstream effects") (citing *Thome v. Sayer Law Group., P.C.*, 567 F. Supp. 3d 1057, 1071–74 (N.D. Iowa 2021)); *Sandoval v. Midland Funding, LLC*, No.

---

[1] Standing must be met and persist throughout all stages of litigation. *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). A district court's obligation to assess standing continues throughout a case, because "[t]o qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

1809396, 2022 WL 2116769, at *4 (D.N.J. June 13, 2022) (finding no standing where plaintiffs asserted only an alleged statutory violation that resulted in no "downstream consequences" or "adverse effects" caused by the violation). Moreover, the Supreme Court made clear that *Spokeo* "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." 141 S. Ct. at 2205 (internal quotations omitted).

Here, Plaintiff alleges that he incurred a credit card obligation to Barclays Bank Delaware ("Barclays") in the amount of $1,436.31. (Am. Compl., ¶¶ 16.) The debt was placed with FRS, which then sent a collection letter to Plaintiff on January 27, 2020 (the "Letter"). (*Id.* at ¶ 22.) The Letter provided three options: (1) pay the balance of the debt "today," (2) resolve the debt for less than the total balance due by making a "reasonable offer," or (3) establish monthly payments as low as $25.00. The Letter advised that FRS is not a law firm and will not initiate any legal proceedings or provide Plaintiff with legal advice. The Letter further stated that "any offers of resolution that are provided to [Plaintiff] are merely offers to resolve your account for less than the balance due." To make a payment, the Letter instructed Plaintiff to call a toll-free number or use FRS's online payment system using a pin number and reference number provided in the Letter. Finally, the Letter also provided an address should Plaintiff wish to mail payment via overnight delivery.

Plaintiff contends that the Letter violated sections 1692c, 1692e, and 1692f, because it conveyed his information to a third-party; used false, deceptive, or misleading representations to collect the debt; and used unfair and unconscionable means to collect the debt. For example, Plaintiff claims that while Option 1 advised that Plaintiff could pay the balance "today," the Letter also advised that Plaintiff could resolve the debt for less than the full balance under Option 2. According to Plaintiff, "Option 1 induces the debtor to pay the full amount of the debt, when in fact the debtor is told he or she can pay less than the full amount if he or she pays the debt in full immediately." (Am. Compl., ¶ 32.) Plaintiff further claims that the Letter violated section 1692e because while Option 2 invites Plaintiff to make a reasonable offer, it "fails to state what a reasonable offer is and how the offer should be made." (*Id.* at ¶ 33.) In addition, Plaintiff alleges that Option 3 was also deceptive and misleading to the extent that it offered a payment plan without informing Plaintiff of its terms. (*Id.* at ¶ 37.) With respect to section 1692c, Plaintiff alleges that Defendant sent information regarding Plaintiff's account to a third-party letter vendor who was responsible for generating and mailing the Letter. (*Id.* at ¶ 52.) Specifically, Plaintiff alleges that in communicating with the vendor, Defendant disclosed Plaintiff's status as a debtor, the amount owed to Barclay's Bank Delaware, and other personal and confidential information about Plaintiff and his account. (*Id.* at ¶ 53.) As to harm, Plaintiff alleges in his Amended Complaint that he "suffered actual harm by being the target of Defendant's misleading debt collection communications." (*Id.* at ¶ 30.) These allegations, however, do not constitute a concrete harm sufficient to confer standing in the wake of *TransUnion*.

This Court's recent decision in *Madlinger v. Enhanced Recovery Co., LLC*, No. 21-00154, 2022 WL 2442430, at *3 (D.N.J. July 5, 2022) is instructive in the instant action. There, the plaintiff, Patricia Madlinger ("Ms. Madlinger"), alleged concrete harm under two distinct theories: confusion and third-party disclosure. As to confusion, Ms. Madlinger alleged that the defendant had violated sections 1692e and 1692g of the FDCPA by sending out an allegedly misleading debt

collection letter. Section 1692e generally prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692g specifies the required contents in a written notice of debt and describes the process by which debts are to be disputed. In particular, Ms. Madlinger alleged that the least sophisticated consumer would be confused as to where to send a debt verification request given the inclusion of multiple addresses in a debt collection letter such that he or she could believe that none of the addresses in the letter was the correct address to dispute a debt. *Id*. at *5. In the context of standing, confusion, when accompanied by detrimental action or inaction, can have a sufficiently close relationship to the traditional harm of common-law fraud. *Id*. To prove fraudulent misrepresentation, a plaintiff must demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Bulboff v. King Aircraft Title, Inc.*, No. 19-18236, 2021 WL 1186822, at *7 (D.N.J. Mar. 30, 2021). In similar fashion, negligent misrepresentation claims require a showing of harm "caused to [plaintiffs] by their justifiable reliance upon" the false information. Restatement (Second) of Torts, § 552(1) (1977). Although I observed that courts have recognized that misleading communications may give rise to concrete harm for Article III standing, I found that Ms. Madlinger failed to allege reliance. *Id*. at *6. Importantly, Ms. Madlinger had not alleged that she had relied on the multiple addresses in the letter in making any decision to verify or dispute the debt. As such, Ms. Madlinger's general allegations of misleading debt communications in violation of §§ 1692e(10), (g) and g(b) were inadequate to confer Article III standing.

Here, similar to the *Madlinger* plaintiff, Plaintiff's allegations in his Amended Complaint do not amount to concrete harm sufficient to establish Article III standing under the rubric set forth in *Spokeo* and clarified in *TransUnion*. However, unlike the *Madlinger* plaintiff, Plaintiff does not even allege a single harm as a result of Defendant's alleged conduct. Rather, Plaintiff merely alleges that he "suffered actual harm by being the target of Defendant's misleading debt collection communications," and that "Defendant's communications were designed to cause Plaintiff to suffer a harmful disadvantage in charting a course of action in response to Defendant's collection efforts." (Am. Compl., ¶¶ 66, 70.) Even accepting these allegations as true, they are conclusory and amount to no more than general allegations of informational injury. Such allegations, alone, are insufficient to confer Article III standing. *See TransUnion*, 141 S. Ct. at 2214 ("An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" (citation omitted)).

"Adequacy of informational harms for standing purposes [] turns on a plaintiff's consequential action or inaction following receipt of a misleading or deceptive collection letter." *Huber v. Simon's Agency, Inc.*, No. 19-01424, 2022 WL 1801497, at *4 (E.D. Pa. June 2, 2022). In the instant case, Plaintiff does not allege any form of reliance on the alleged misleading communication, let alone detrimental reliance. *See Kola v. Forster & Garbus LLP*, No. 19-10496, 2021 WL 4135153, at *4 (S.D.N.Y Sept. 10, 2021) ("[M]erely receiving a letter from a debt collector that was confusing or misleading as to the amount owed does not demonstrate a harm closely related to fraudulent or negligent misrepresentation—both of which require some form of reliance."); *see also Ward v. Natl. Patient Account Services Sols., Inc.*, 9 F.4th 357, 363 (6th Cir. 2021). In addition, although it appears that Plaintiff has hired an attorney to represent him in this matter, consulting a lawyer in and of itself is insufficient to meet Article III's injury-in-fact requirement. *See e.g., Deiker v. TrueAccord Corp.*, No. 20-00669, 2021 WL 4502138, at *3 (N.D.

Ill. Sept. 30, 2021) ("even if a debt communication violates the FDCPA in some way, consulting an attorney does not in and of itself establish an injury-in-fact without further allegations of concrete harm"); *Cavazzini v. MRS Assocs.*, No. 21-5087, 2021 WL 5770273, at *7 (E.D.N.Y. Dec. 6, 2021) ("[H]iring an attorney [] does not support standing because the burdens of bringing a lawsuit cannot be the sole basis for standing.").

As for Plaintiff's claims of improper third-party disclosure, I find that the harm Plaintiff alleges most closely resembles the privacy cause of action for public disclosure of private facts. New Jersey courts have instructed that to state a claim for public disclosure of private facts, a plaintiff must demonstrate (1) that the defendant has given publicity to matters that actually were private, (2) that dissemination of such facts would be offensive to a reasonable person and (3) that the public has no legitimate interest in being apprised of the facts publicized. *See, e.g.*, *Bisbee v. John C. Conover Agency, Inc.*, 186 N.J. Super. 335, 340 (App. Div. 1982); *see also* Restatement (Second) of Torts § 652D. The Restatement defines publicity as follows:

> "Publicity" . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge . . . . Thus it is not an invasion of the right to privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

Restatement (Second) of Torts § 652D, Comment (a). Although the Third Circuit has not addressed the tort of public dissemination of private information in the context of third-party mail vendors, at least three other district courts within the Third Circuit have done so, and have rejected the qualification of the "mail vendor" claim as a public dissemination of private information tort. As a result, none of these courts found the "mail vendor" theory sufficient to establish Article III standing. Critically, in all three of those cases, the district courts found the lack of "publicity" fatal to the plaintiffs' attempted analogization of the mail vendor theory to the tort of disclosure of private facts. *See Rohl v. Pro. Fin. Co., Inc.*, No. 21-17507, 2022 WL 1748244, at *3 (D.N.J. May 31, 2022) (finding no publication where plaintiff's complaint did "not allege that her private information was publicized to the general public"); *Pagan v. Convergent Outsourcing*, Inc., No. 21-12130, 2022 Lexis 71428, at *10 (D.N.J. Mar. 30, 2022) (observing that "[p]laintiffs do not allege that anyone actually read their information (rather than merely processed it), or that there has otherwise been publicity to any meaningful degree"); *Barclift v. Keystone Credit Servs., LLC*, No. 21-4335, 2022 WL 444267, at *9 (E.D. Pa. Feb. 14, 2022) ("[e]ven assuming that the employees of the mailing vendor read [the plaintiff's] personal information, sharing her personal information with 'a small group of persons is not publicity.'") Consequently, the courts determined that the plaintiffs lacked standing to bring their mailing vendor claims.

In the instant matter, Plaintiff's mail vendor theory of harm fails for the same reason—it involves no publicity. Indeed, nothing in Plaintiff's Amended Complaint alleges that his information, including his name, address, and debt owed, ever was made accessible to more than a single individual who populated his letter, let alone the broader public. The Amended Complaint alleges only that his information was communicated to the third-party letter vendor. (Am. Compl. ¶¶ 52-53.) Taking the facts in the light most favorable to the Plaintiff, even were the Court to construe the Amended Complaint as alleging that a small group of letter vendor employees may

5

have read the collection letter, such a communication would be insufficient. *See Hamza v. United Cont'l Holdings, LLC*, No. 19-8971, 2021 WL 3206814, at *10 (D.N.J. July 29, 2021) ("it is not an invasion of the right to privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons") (internal quotations and citations omitted).

In *TransUnion*, the Supreme Court instructed that "disclosures to printing vendors," similar to the mailing vendor in this case, are not considered a "publication" in the context of a defamation claim. 141 S. Ct. at 2210 n.6. Although this observation constituted dicta in a footnote in the Court's opinion, "[t]he bar for satisfying 'publication' requirement in a defamation claim is much lower than the bar for establishing 'publicity' in a privacy claim." *Barclift v. Keystone Credit Servs., LLC,* No. 21-4335, 2022 WL 444267, at *9 (E.D. Pa. Feb. 14, 2022). Thus, if disclosure to printing vendors does not constitute publication in the context of defamation, neither does disclosure to mailing vendors in a privacy claim, here.

Nevertheless, Plaintiff argues that he has Article III standing for his disclosure claims based on *Khimmat v. Weltman, Weinberg & Reis Co.*, a recent decision issued by the Eastern District of Pennsylvania. No. 21-02944, 2022 U.S. Dist. LEXIS 21076, *12 (E.D. Pa. Feb. 7, 2022). There, the district court was faced with the mailing vendor theory, and interpreted the same footnote in TransUnion as recognizing that a plaintiff might suffer an injury where a letter vendor read, and did not merely process the information. *Id.* However, *Khimmat* is distinguishable from the instant case as it only discussed the interpretation of the FDCPA, not Article III standing. *See id.*, at *1, ("[T]his dispute is about whether Congress meant what it said in the [FDCPA].").[2]

Moreover, a brief look to legislative history does not favor standing for these types of disclosure claims. Indeed, the alleged incidental sharing of Plaintiff's information is not the type of practice that concerned Congress when it enacted the FDCPA. Congress passed the FDCPA to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). In that regard, Congress was concerned with a consumer's sensitive information being disclosed "to friends, neighbors, or an employer," not disinterested mailing vendors. S. Rep. No. 95–382, at 2 (1977). In fact, "[w]hat matters is not so much the amount or the nature of the debt, but to whom the information is exposed." *Sputz v. Alltran Financial, LP*, No. 21-4663, 2021 WL 5772033, at *5 (S.D.N.Y. Dec. 5, 2021). Mailing vendors are more akin to "modern-day stenographer[s] or clerk[s], briefly viewing the information for the purpose of creating and/or processing a communication," than employers who could conceivably inflict economic or reputational harm upon reviewing certain sensitive information regarding their employees. *Cavazzini v. MRS Assocs.*, No. 21-5087, 2021 WL 5770273, at *6 (E.D.N.Y. Dec. 6, 2021). The routine mailing of a letter by

---

[2] The court is aware of three decisions issued by other courts that have approved of the mailing vendor theory, one of which was vacated. *See*, *e.g.*, *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1016 (11th Cir. 2021) (finding that the mailing vendor theory establishes standing for FDCPA claims), *reh'g en banc granted, opinion vacated*, 17 F.4th 1103 (11th Cir. 2021); *Thomas v. Unifin, Inc.*, No. 21-3037, 2021 WL 3709184, at *2 (N.D. Ill. Aug. 20, 2021) (relying on the now vacated opinion by the Eleventh Circuit in finding standing for the mailing vendor claims); *Keller v. Northstar Location Servs.*, No. 21-3389, 2021 WL 3709183, at *2 (N.D. Ill. Aug. 20, 2021) (same). Notwithstanding these non-binding decisions, which have questionable value since *Hunstein* has been vacated, the Court will follow the majority of district courts in this Circuit, and numerous courts outside of the Third Circuit, that have rejected such theory as a basis for Article III standing. *See Barclift*, 2022 WL 444267, at *8 (listing cases).

a third-party vendor notifying a consumer that their outstanding debt has been placed with a debt collector for collection is a far cry from the abusive, harassing debt collection practices that Congress sought to curtail.

      In sum, absent allegations of any concrete harm, Plaintiff is asserting merely statutory violations that lack standing under *TransUnion*. Thus, this Court concludes that Plaintiff has no standing to assert his section 1692c, 1692e, and 1692f claims. Accordingly, this Court lacks subject matter jurisdiction over the instant action. Because Plaintiff was already provided with an opportunity to submit supplemental briefing analyzing whether he had Article III standing to bring each of his claims, Plaintiff's claims are dismissed without prejudice for lack of subject matter jurisdiction. This matter is **CLOSED**.

                                                       /s/ Freda L. Wolfson
                                                       Freda L. Wolfson
                                                       U.S. Chief District Judge